IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TINA M. HUTZLER,<br><br>          Plaintiff,<br>v.<br><br>CAROLYN W. COLVIN,<br><br>          Defendant. | MEMORANDUM DECISION AND ORDER REMANDING DECISION OF COMMISSIONER<br><br>Case No. 2:12-cv-512<br><br>District Judge<br><br>Magistrate Judge Brooke Wells |

This matter is before the Court on Plaintiff Tina Hutzler's appeal from the final decision of the Commissioner of Social Security finding her not disabled, as set forth in the Administrative Law Judge's April 23, 2010 decision.[1] The ALJ's decision was made final by the Appeals Council's decision denying Ms. Hutzler further review.[2] After careful consideration of the record, relevant law, and the parties' memoranda, the Court has determined that oral argument is unnecessary and decides this case based upon the record before it.[3] For the reasons set forth below, the Court reverses the decision of the ALJ and remands this matter for further consideration.

---

[1] The Court notes that on October 28, 2012, Ms. Hutzler died from cardiac arrest due to infective endocarditis. Ms. Hutzler had three children at the time of her death. In March of this year the Court granted the motion to substitute Ms. Hutzler's children in her behalf (Tasha Hutzler, Anthony Hutzler, and Tiana Hutzler). The Court refers to Plaintiff Tina Hutzler throughout its decision because the events transpired while Ms. Hutzler was living.

[2] Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

[3] *See* Scheduling Order, docket no. (noting that [o]ral argument will not be heard unless requested at the time of [the] filing first briefs by either party and upon good cause shown").

## BACKGROUND[4]

On May 18, 2007, Plaintiff protectively filed an application for Disability and Disability Insurance Benefits (DIB) as well as an application for Supplemental Security Income (SSI). Ms. Hutzler alleges disability beginning on March 16, 2006. Her application was denied initially and upon reconsideration. Ms. Hutzler requested a hearing before an ALJ and after postponing the hearing twice to allow for the supplementation of the record,[5] a hearing was held on March 30, 2010. The ALJ issued a decision finding Ms. Hutzler not disabled and the Appeals Council denied her requests for review. This appeal followed.

On "October 28, 2012, Ms. Hutzler died from cardiac arrest due to infective endocarditis."[6] Ms. Hutzler was not married at the time of her death but did have three children, Tasha Hutzler, Anthony Hutzler, and Tiana Hutzler. Therefore pursuant to 42 U.S.C. §1383(b)(1)(A) Ms. Hutzler's death extinguished her claim for SSI.[7] Her claim for DIB alleges an onset date of March 16, 2006, and as of that date her three children would have been minors and thus eligible for benefits under Title XVI. In March of this year the Court granted the motion to substitute Ms. Hutzler's children in her behalf.[8]

Ms. Hutzler was 36 years old as of the date of her alleged disability onset date in March 2006. She alleges disability because of both mental and physical ailments. These include a head

---

[4] The parties fully set forth the medical history in their respective memoranda. The Court finds it unnecessary to repeat that record in detail here. Instead, the Court notes those items that are pertinent to its decision.

[5] Tr. 108-29, 98-107.

[6] Mtn to Substitute Party p. 1, docket no. 22.

[7] 42 U.S.C. § 1383(b)(1)(A); *See also, e.g., Smith v. Califano*, 597 F.2d 152, 155-56 (9th Cir. 1979) (noting the plain language of the then relevant version of 42 U.S.C. § 1383(b) and its legislative history made it clear that Congress did not intend that the commissioner make posthumous underpayments of Title XVI, or SSI benefits to anyone except an eligible spouse); *Dykes ex. rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 466 n.4 (6th Cir. 2004) (noting that the daughter of the deceased claimant conceded that SSI benefits, which were payable only to a surviving spouse, were not involved in the appeal); *Wasilauskis v. Astrue*, 2009 WL 861492 *3 (D.Me. March 30, 2009) (concluding that retroactive SSI benefits were unavailable for the deceased applicant's representative).

[8] Order granting Motion to Substitute Party, Docket no. 24.

injury, neck and shoulder pain, headaches, and pain in her lower back and left knee.[9]  Ms. Hutzler underwent numerous knee surgeries including in September 2004,[10] January 2005,[11] November 2005,[12] and August 2006.[13]  In May 2006, she was diagnosed with chronic patellar pain due to the extensive scarring from her knee infections.  In addition, the record is replete with evidence concerning Ms. Hutzler's cardiac impairments,[14] mental disorders,[15] and pain following a motor vehicle accident in June 2007.[16]  In short, the medical record is quite long and gives a thorough overview of Ms. Hutzler's impairments.

     The ALJ followed the five-step sequential process for evaluating disability claims as set forth in the regulations.[17]  At step three, the ALJ found Ms. Hutzler had the following severe impairments: aortic valve replacement with patent foramen ovale closure, cardiac arrhythmia with pacemaker, history of osteoarthritis with left knee surgery, mood disorder, anxiety disorder, and substance abuse.[18]  The ALJ then found that Ms. Hutzler did not have an impairment or combination of impairments that met or equaled one of the listed impairments.[19]  Specifically the ALJ considered neurological impairments under Sections 12.02, 12.04, 12.06, and 12.09.[20]  The ALJ then concluded that Ms. Hutzler had the residual functional capacity (RFC) to perform

---

[9] Tr. 333 (Tr. refers to the administrative record before the Court).
[10] Tr. 441.
[11] Tr. 421, 441.
[12] Tr. 443, 448.
[13] Tr. 447.
[14] Tr. 455, 652, 676, 682, 732, 1046.
[15] Tr. 470, 465, 869, 871, 874, 879, 1283.
[16] Tr. 533, 538, 553, 574.
[17] 20 C.F.R. § 404.1520. Tr. 14-15.
[18] Tr. 16.
[19] *See* 20 C.F.R. § 404.1520(d).
[20] *See id.* Appendix 1 to Subpart P of 404—Listing of Impairments.

sedentary work as defined in the regulations.[21]  The ALJ further restricted Ms. Hutzler's capacity finding she had limited use of her left lower extremity, could never climb ladders, ropes or scaffolds, could only occasionally kneel and crawl, and further reduced her abilities to account for Ms. Hutzler's mild mental limitations.[22]  In addition the ALJ further restricted Ms. Hutzler's ability noting her moderate limitations in following a schedule, maintaining regular work attendance, and in following directions.  At step four, the ALJ concluded Ms. Hutzler was unable to perform any past relevant work such as a mail clerk or fast food worker.[23]  Then at step five the ALJ found that there were no jobs Ms. Hutzler could perform when taking into account her substance abuse.

As indicated in the record, Plaintiff has a history of substance abuse.[24]  She also abused prescription pain medication and engaged in "binge drinking."[25]  There are also periods set forth in the record where Ms. Hutzler reported that she was "doing pretty well" and was clean.[26]

After concluding Ms. Hutzler could not work when taking into account her substance abuse, the ALJ then followed 20 C.F.R. § 404.1535 to determine if Plaintiff's substance abuse was a contributing material factor to the determination of disability.[27]  The ALJ determined that if Ms. Hutzler stopped her substance abuse, her impairments, either alone or in combination, did not meet or equal a listed impairment.  Next the ALJ reassessed Ms. Hutzler's RFC determining that she could perform a reduced range of unskilled sedentary work with additional limitations.[28]

---

[21] 20 C.F.R. § 404.1567(a).

[22] Tr. 17.

[23] Tr. 19.

[24] Tr. 469.

[25] *Id.*

[26] Tr. 484, 195, 918-924.

[27] Tr. 20.

[28] Tr. 21.

In assessing Plaintiff's RFC the ALJ specifically noted the contradictions in the record between Plaintiff's testimony and the medical evidence, including Ms. Hutzler's misrepresentations about her drug abuse.[29] At step four, the ALJ determined Ms. Hutzler could not perform her past relevant work, but at step five based on the testimony of the vocation expert, the ALJ concluded that Ms. Hutzler could perform other work that existed in the national economy if she stopped the substance abuse. Thus, the ALJ concluded that Ms. Hutzler would not be disabled if she stopped her substance use and therefore was not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the ALJ's factual findings and whether the correct legal standards were applied.[30] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[31]

Additionally, the ALJ is required to consider all of the evidence; however, the ALJ is not required to discuss all evidence.[32] In reviewing the ALJ's decision the Court should evaluate the record as a whole, including that evidence before the ALJ that detracts from the weight of the ALJ's decision.[33] The Court, however, may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[34] Where the evidence as a whole can support either the agency's

---

[29] Tr. 22-35.

[30] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[31] *Id.* (citation omitted).

[32] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

[33] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[34] *Lax*, 489 F.3d at 1084 (citation omitted).

decision or an award of benefits, the agency's decision must be affirmed.[35] Further, the Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the Court would justifiably have made a different choice had the matter been before it de novo.'"[36]

## DISCUSSION

Ms. Hutzler raises three issues on appeal: 1) Whether the ALJ erred by failing to consider Listing 1.02? 2) Whether the ALJ erred in her evaluation of the medical opinion evidence? and 3) Whether the ALJ erred in her evaluation of Ms. Hutzler's residual functional capacity assessment?

I.     Listing 1.02

Plaintiff asserts that the ALJ erred by failing to consider Listing 1.02. Listing 1.02 requires a finding of disability if a claimant demonstrates major dysfunction of a joint due to any cause.[37] Major dysfunction is "[c]haracterized by gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis[38] of the affected joint(s)."[39] In addition, for a claimant to qualify under Listing 1.02 they must be unable to ambulate effectively as defined by § 1.00(B)(2)(b) which provides the following:

> b. What we mean by inability to ambulate effectively.
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.

---

[35] *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

[36] *Lax*, 489 F.3d at 1084 (quoting *Zoltanski*, 372 F.3d at 1200).

[37] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02.

[38] Ankylosis is defined in the Marriam Webster dictionary as a stiffness or fixation of a joint by disease or surgery.

[39] *Id.*

>Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
>(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.[40]

Plaintiff argues that the record "implicate[s] Listing 1.02A, Major Dysfunction of a Joint,"[41] but the ALJ failed to properly consider this Listing. For example, Plaintiff underwent multiple knee surgeries and visited doctors numerous times expressing severe pain in her knee.[42] In addition, the ALJ specifically noted Ms. Hutzler's use of a cane for approximately two years during the hearing.[43] And, in her decision, the ALJ noted instances where Ms. Hutzler struggled to ambulate effectively.[44] For example, on April 10, 2008, Plaintiff "walked with a straight leg gait and limp on the left knee."[45] On June 19, 2008, Plaintiff was on crutches and on July 3, 2008, she was "walking with an assistive device."[46]

---

[40] *Id.*

[41] Opening brief p. 10.

[42] Tr. 421, 427, 434, 441

[43] Tr. 63. The Court notes that the entire testimony reads as follows: "probably a quarter of a mile, I don't know, not even that."

[44] Tr. 25-27.

[45] Tr. 25.

[46] Tr. 26.

In contrast, the Government asserts that "Plaintiff did not even arguably meet Listing 1.02, as she was not unable to ambulate effectively."[47] The Government points to Plaintiff's own testimony during the hearing where she stated she could walk "probably a quarter of a mile."[48] Further, Plaintiff did not meet all of the specified medical criteria in the listing.[49] For example, evidence indicates that Plaintiff's gait was normal, her left knee's range of motion had only minor limitations and she never used a walker or two assistive devices to walk as set forth in the regulations.[50] Finally, the Government asserts that the "ALJ was not required to consider Listing 1.02 as Plaintiff's knee impairment failed to even arguably meet its requirements."[51]

The Court agrees with the Government's argument that there is evidence in the record undermining Plaintiff's assertion that she met Listing 1.02. For example, the ALJ noted that on May 13, 2008, Ms. Hutzler "ambulated independently without an assistive device."[52] On January 15, 2009, she had full range of motion and on August 26, 2009, once again, Plaintiff could walk without the use of an assistive device.[53] The Court, however, disagrees that Plaintiff's knee impairment fails to even arguably meet the Listing's requirements. As noted *supra*, there is evidence in the record at least implicating the requirements of Listing 1.02. Further, the Listing specifically states "examples of ineffective ambulation include, <u>but are not limited to</u>, the inability to walk without the use of a walker, two crutches or two canes."[54] The

---

[47] Op. p. 10.

[48] Tr. 63.

[49] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

[50] Tr. 25-27, 562, 726, 1081, 1083, 1087, 1189-90.

[51] Op. p. 11.

[52] Tr. 26.

[53] Tr. 26-27.

[54] 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b) (emphasis added).

8

Government's argument, however, reads this definition as specifically requiring the use of a walker or two assistive devices to qualify under the listing. Such a reading is not supported by the plain language of the definition. Finally, the Tenth Circuit has previously noted that it is not the desire of reviewing courts "to needlessly constrain ALJs by erecting procedural hurdles that block the ultimate goal of determining disability."[55] But, it is "reasonable nonetheless to require that the ALJ's decision be sufficiently articulated so that it is capable of meaningful review."[56] In the instant case the ALJ's decision provides this Court with nothing to review regarding Listing 1.02. The Court finds the evidence in the record, at a minimum, implicates Listing 1.02 and it was error for the ALJ to fail to consider its requirements. A post hoc weighing of the evidence by the Government asserting that the Listing would not be met is simply not enough to satisfy the ALJ's duty.

II. The ALJ's Evaluation of the Medical Evidence and Her Determination of Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ erred in both her evaluation of the medical opinion evidence and in her evaluation of Ms. Hutzler's RFC. Upon reviewing the record the Court is not persuaded by these arguments. While there is conflicting medical opinion evidence in the record, this Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]."[57] Further, in contrast to Plaintiff's arguments, the ALJ is not required to discuss all evidence.[58] Rather, in looking at the record as a whole, this Court is not convinced that the ALJ

---

[55] *Spicer v. Barnhart*, 2003 WL 21000999, *5 (10th Cir. May 5, 2003).

[56] *Id.*

[57] *Lax*, 489 F.3d at 1084 (citation omitted).

[58] *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2000).

9

erred in evaluating the large volume of conflicting medical opinion evidence and the Court declines Plaintiff's invitation to substitute its judgment for that of the ALJ.

In similar fashion, the Court finds the ALJ did not err in assessing Plaintiff's RFC because the ALJ's assessment is supported by substantial evidence in the record. The ALJ properly accounted for Plaintiff's ailments supported in the record and even further restricted Ms. Hutzler's RFC to account for additional physical and mental limitations such as the inability to follow directions or maintain regular work attendance.[59] The Court finds the ALJ's RFC analysis properly accounted for these physical and mental limitation in both her initial analysis, which took into account Plaintiff's substance abuse history, and also in her subsequent analysis weighed under the premise of Plaintiff stopping her substance use.

Thus the Court finds no error in the ALJ's evaluation of the medical opinion evidence or in the ALJ's assessment of Ms. Hutzler's RFC.

## CONCLUSION

For the foregoing reasons, the Court reverses and remands this matter to the ALJ for consideration of Listing 1.02.

So Ordered

DATED this 9 September 2013.

Brooke C. Wells
United States Magistrate Judge

---

[59] Tr. 17-19.